IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DAVID ALAN KOSTER,**            Case Number 1:13cv2719

    Plaintiff,                               Judge Benita Pearson

    v.                                      Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.                       REPORT AND RECOMENDATION

## INTRODUCTION

Plaintiff David Alan Koster seeks judicial review of Defendant Commissioner of Social Security's decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). The district court has jurisdiction under 42 U.S.C. § 405(g) and § 1383(c)(3). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2 (b)(1). (Non-document entry dated December 10, 2013). For the reasons stated below, the undersigned recommends the Commissioner's decision be affirmed.

## PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on September 24, 2010, claiming he had been disabled since July 29, 1986 due to back problems, anxiety, psychosis, right orbital fracture, nasal bone fracture, subarachnoid hemorrhage, alcoholism, L3 compression, and lumbar spine problems. (Tr. 12, 70). His claims were denied initially and on reconsideration. (Tr. 12, 90, 100). On March 22, 2012 and at Plaintiff's request, a hearing was held before an administrative law judge ("ALJ"). (Tr. 107). Plaintiff, represented by counsel, and a vocational expert ("VE") testified at the hearing. (Tr. 9, 26). A supplemental hearing was held on July 5, 2012 to obtain

additional vocational testimony. (Tr. 57). Plaintiff's attorney appeared on his behalf and a second VE testified. (Tr. 12, 57). Afterward, the ALJ found Plaintiff not disabled. (Tr. 9). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1); 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481. On December 10, 2013, Plaintiff filed the instant case. (Doc. 1).

**FACTUAL BACKGROUND**

*Plaintiff's Vocational and Personal Background*

Born February 10, 1961, Plaintiff was 49 years old when his application was filed. (Tr. 20). He has an eleventh grade education and no prior relevant work experience. (Tr. 62).

Plaintiff's Brief (Doc. 13) contains no factual discussion or reference to the medical record. However, the ALJ's discussion of Plaintiff's medical history, hearing testimony, and background is an accurate and thorough reflection of the record and is incorporated herein, as follows:

> The claimant testified that a car hit him while he was crossing the street on February 8, 2010. Immediately after the accident, he had surgery on the lower part of his right arm in which two steel plates were inserted. Both legs were broken but they were not compound fractures. The claimant stated that low back pain is his biggest problem though he has pain in his "whole body" including his arm and neck. He uses a cane. He has "medical shoes" (boot with a brace for his left leg) because his left leg is about 2.5 inches shorter than his right leg. He uses both the cane and shoe all the time. The claimant stated that he can lift 20 pounds but would have difficulty lifting 40 pounds due to low back pain. He can walk 1/4 mile and stand for 30 minutes. He has depression and his mind races. He further stated that he drinks beer two times a week.

\* \* \*

> In terms of the claimant's alleged physical limitations and symptoms including pain, a review of the evidence of record shows that the claimant was admitted to the hospital on February 8, 2010 for multiple fractures due a traffic accident. At the time, the claimant was acutely intoxicated from alcohol. The claimant underwent open reduction internal fixation of his right radial shaft and distal ulna though the most prominent fractures were of both tibias. On February

2

19, 2010, the claimant was discharged from the hospital to a rehabilitation facility. He was wheelchair bound at that time. The claimant remained non-weight bearing for the first part of his rehabilitation stay but gradually progressed to weight bearing as the fractures healed (Ex. 2F, p. 2-3, 8, and 47-49).

As of April 26, 2010, the claimant complained of numbness and tingling at both small fingers. The claimant's orthopedic doctor told him to proceed with weight bearing as tolerated (Ex. 2F, p. 8). As of May 12, 2010, the claimant had made gains in physical therapy with increased strength and he could walk with a cane. He was not depressed, his mood was good, and he was not anxious. He had some mild cognitive deficits with some initial inaccuracy with answering questions. Harry Pollack, M.D., diagnosed anxiety NOS; continued the claimant on Haldol; and assigned a global assessment of functioning of 60-70 (Ex. 5F, p. 58-60).

At discharge from the rehabilitation facility on May 19, 2010, the claimant was fully weight bearing. His pain was controlled with narcotics and those were tapered down to MS Contin (Morphine) twice daily and Vicodin as needed. The doctor tapered the Haldol down but was unable to stop it without the claimant experiencing anxiety/hoarding. The claimant was also started on Celexa for underlying depression and anxiety. At discharge, the claimant felt that he would be compliant with avoiding alcohol. He was weight bearing as tolerated and he was discharged to home in an improved condition (Ex. 2F, p. 2-3 and 47-49).

X-rays of the lumbar spine performed on March 17, 2010 showed lumbar spondylosis (Ex. 2F, p. 57-58).

On December 2, 2010, the claimant saw Michael Seidman, M.D., with a request for pain medication. The claimant stated that he had pain in multiple areas of the body including knees, back, and neck. He had been without pain medication for the last three months due to financial issues. Previously he was on narcotics and then Motrin but the Motrin "tore up his stomach." The claimant ambulated without difficulty. Dr. Seidman advised the claimant that he would not provide narcotics feeling that they were not necessary since the claimant had gone for three months without pain medication. Dr. Seidman offered extra strength Tylenol instead which the claimant readily agreed to (Ex. 5F, p. 74-75).

On December 17, 2010, the claimant saw Mark Krofina, M.D., for a physical. The claimant was not taking any medications. The claimant asked Dr. Krofina to fill out paperwork for disability due to his orthopedic injuries. Dr. Krofina told the claimant that he could not fill out the functional evaluation portion but would refer the claimant to the physical medicine and rehabilitation department for help and evaluation of his condition. He prescribed Mobic and Trazodone for sleep, and referred the claimant to the psychiatry department (Ex. 6F, p. 6-7). It does not appear that the claimant followed up with either referral.

. . . The claimant attended a face-to-face interview at SSA on September 24, 2010. The interviewer observed no difficulties with the claimant's sitting, standing, or walking. The interviewer did not note that the claimant used a cane (Ex. 1E, p. 3). The claimant is able to ride the bus or walk to get places (testimony).

The claimant testified that he has a medical card but has not sought recent medical care and does not take medication. Despite having a medical card, the record fails to show that the claimant has seen any medical professional since December 17, 2010. At that time, Dr. Krofina referred the claimant to two other departments but the claimant did not follow through. . . .

On December 2, 2010, Dr. Seidman noted that the claimant ambulated without difficulty. He did not note that the claimant was using a cane. Neither did Drs. Krofina or Zerba. . . .

As for the opinion evidence regarding the claimant's physical impairments, on December 23, 2010, W. Jerry McCloud, M.D., reviewed the claimant's case file at the request of the State agency, the Division of Disability Determination Services. He expressed the opinion that the claimant could perform light work with the following postural limitations: occasional climbing of ramps and stairs and no climbing of ladders, ropes or scaffolds; and occasional stooping, kneeling, crouching, and crawling (Ex. 3A). On March 22, 2011, State agency medical consultant Lynne Torello, M.D., concurred with Dr. McCloud's assessment at 3A (Ex. 4A). . . .

Regarding the claimant's alleged mental limitations, on June 18, 2010, the claimant was taken to the Emergency Room with complaints of suicidal thoughts and depression. He had been using alcohol. He was watched for about six hours, became sober, and stated that he was not suicidal and just wanted to go home. He explained that he had recently been hit by a car and had been working, and was now depressed about loss of work and his chronic leg pain due to trauma. The physical examination showed no acute abnormality. Diagnoses included alcohol intoxication and depression (Ex. 3F, p. 4-6).

On December 8, 2010, the claimant attended a psychological consultative examination conducted by Margaret Zerba, Ph.D. The claimant's grooming and hygiene were good and he was cooperative. He appeared depressed with flat affect. Dr. Zerba diagnosed the claimant with major depressive disorder and assigned a global assessment of functioning of 51, indicative of moderate symptoms (Ex. 4F).

. . . Despite having a medical card, the record fails to show that the claimant has seen any mental health professional since about June 2010 and he is not taking any psychotropic medication.

> As for the opinion evidence regarding the claimant's mental impairments, Dr. Zerba expressed the opinion that the claimant's ability to understand and follow directions is not impaired; his ability to pay attention to perform simple, repetitive tasks is not impaired; his ability to relate to others in the work environment is not impaired; and his ability to withstand stress and pressures of day-to-day work activity is moderately impaired due to depression, problems with sleep and appetite, and memory problems (Ex. 4F, p. 5-6). . . .
>
> On December 17, 2010, Carl Tishler, Ph.D., reviewed the claimant's case file at the request of the State agency, the Division of Disability Determination Services. He expressed the opinion that the claimant could understand and perform simple, routine tasks that involve few changes (Ex. 3A). On March 25, 2011, State agency medical consultant Deryck Richardson, Ph.D., reviewed the claimant's case file and expressed the opinion that the claimant could understand and perform 3 to 4 step tasks that involve few changes and do not require a rapid pace (Ex. 4A).

(Tr. 17-19).

*ALJ Decision*

On August 15, 2012, the ALJ determined Plaintiff suffered from severe impairments including history of fractures from a motor vehicle accident on February 8, 2010, lumbar spondylosis, depression, anxiety disorder, and substance addiction disorder. (Tr. 14). The ALJ found these impairments did not meet or medically equal a listed impairment. (Tr. 14-16).

Next, the ALJ determined Plaintiff had the RFC to perform less than the full range of light work. (Tr. 16). He could lift twenty pounds occasionally and lift ten pounds frequently; stand, walk, and sit for up to six hours in an eight-hour workday; had an unlimited ability to push/pull; could occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds; and could occasionally stoop, kneel, crouch, and crawl. (Tr. 16). Plaintiff could understand and perform simple routine tasks (unskilled work) that involved few changes and did not require a rapid pace and he could perform low-stress work, i.e., work without arbitration, negotiation, confrontation, responsibility for the safety of others, or supervisory responsibility. (Tr. 16). Based on the second VE's testimony, the ALJ determined Plaintiff could perform work as a

5

cleaner/housekeeper, car wash attendant, or mail clerk, and therefore, was not disabled. (Tr. 20-21).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence, or indeed a preponderance of the evidence, supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for DIB and SSI is predicated on the existence of a disability. 42 U.S.C. § 423(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five–step evaluation process – found at 20 C.F.R. § 404.1520 – to determine if a claimant is disabled:

1. Was the claimant engaged in a substantial gainful activity?

2. Did the claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's RFC and can he perform past relevant work?

5. Can the claimant do any other work considering his RFC, age, education, and work experience?

Under this five–step sequential analysis, the claimant has the burden of proof in steps one through four. *Walters*, 127 F.3d at 529. The burden then shifts to the Commissioner at step five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.* The court considers the claimant's RFC, age, education, and past work experience to determine if the claimant could perform other work. *Id.* A claimant is only found disabled if he satisfies each element of the analysis, including inability to do other work, and meets the durational requirements. 20 C.F.R. §§ 404.1520(b)–(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff argues the ALJ's RFC and corresponding step five hypothetical are not supported by substantial evidence. (Doc. 13).

A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545; 416.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. §§ 404.1529; 416.929. An ALJ must also consider and weigh medical opinions. §§ 404.1527; 416.927. When a claimant's statements about symptoms are not substantiated by objective medical evidence, the ALJ must make a finding regarding the credibility of the statements based

7

on a consideration of the entire record. Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, *1.

To meet her burden at the fifth step, the Commissioner must make a finding "'supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs.'" *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *O'Banner v. Sec'y of Health, Education & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978)). "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question." *Id.* Important here, if an ALJ relies on a VE's testimony in response to a hypothetical to provide substantial evidence, that hypothetical must accurately portray the claimant's limitations. *Ealy*, 594 F.3d at 516-17; *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (explaining that although an ALJ need not list a claimant's medical conditions, the hypothetical should provide the VE with the ALJ's assessment of what the claimant "can and cannot do"). "It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Here, after consideration of the record, the ALJ found Plaintiff had the RFC to:

[P]erform less than the full range of light work as defined in 20 CFR 416.967(b). Specifically, he can occasionally lift 20 pounds and frequently lift 10 pounds. He is able to stand and walk 6 hours of an 8-hour workday and sit for 6 hours of an 8-hour workday. He has an unlimited ability to push/pull other than shown for lift and/or carry. He can occasionally climb ramps and stairs and he can never climb ladders, ropes, or scaffolds. He can occasionally stoop, kneel, crouch, and crawl. He can understand and perform simple routine tasks (unskilled work) that involve few changes and do not require a rapid pace. He can perform low stress work meaning no arbitration, negotiation, confrontation, responsibility for the safety of others, and no supervisory responsibility.

(Tr. 16).

The ALJ's hypothetical posed to the VE mirrors the RFC determination. To this end, at the second hearing on July 5, 2012, the ALJ described the following hypothetical the VE:

> I'd like you to consider a person with the same age, education and no past work as indicated, as the claimant, who is able to occasionally lift 20 pounds and frequently lift 10 pounds; is able to stand and walk six hours of an eight hour work day; is able to sit for six hours of an eight hour work day; would have unlimited push and pull other than shown for lift and/or carry; could occasionally climb ramps and stairs; can never climb ladders, ropes or scaffolds; can occasionally stoop, knee[l], crouch and crawl.
>
> In addition this hypothetical individual can understand and perform simple, routine tasks or unskilled work that involves few changes and do not require a rapid pace.

(Tr. 62). The VE responded that such a person could find work as a cleaner/housekeeper, carwash attendant, or mail clerk. (Tr. 63). The ALJ added:

> I'd like you to further assume that this hypothetical individual can perform low stress work. By that I mean no arbitration, no negotiation or confrontation, or responsibility for the safety of others, and no supervisor responsibilities. Would that hypothetical individual be able to perform the jobs that you've identified?

(Tr. 63-64). The VE answered affirmatively. (Tr. 64).

Turning now to each of Plaintiff's arguments, Plaintiff first asserts the ALJ erred because she did not ultimately incorporate a fifteen percent off-task limitation in the RFC or rely on a hypothetical including that limitation. (Doc. 13, at 2-6). As support, Plaintiff points to: 1) VE testimony indicating that a hypothetical person with various limitations, including being off-task fifteen percent of the time, would not be able to find work in the national economy; and 2) Plaintiff's testimony that he was in physical pain. (Doc. 13, at 2-6). In his Reply Brief, Plaintiff adds mention of Dr. Zerba's finding Plaintiff had moderate impairments in ability to withstand the stress and pressures of day-to-day work activity. (Doc. 16, at 2-3).

Plaintiff's argument is unavailing because he does not cite to any evidence in his treatment record finding he would be off-task due to chronic pain. Stated differently, although

9

the VE testified that a person with certain limitations, including being off-task fifteen percent of the time, would not be able to find work, it is not clear from that record that Plaintiff required such a limitation. Further, an ALJ "is required to incorporate only those limitations accepted as credible by the finder of fact" into the hypothetical question. *Casey*, 987 F.2d at 1235. Plaintiff's argument is simply unsupported by the record and for that reason, is not well-taken.

Next, Plaintiff says the ALJ failed to present limitations resulting from a history of depression and anxiety to the VE. (Doc. 13, at 6). To the contrary, the ALJ described to the VE someone who could only understand and perform simple, routine tasks and required unskilled work that involved few changes, no rapid pace, and that was low stress – meaning no arbitration, negotiation, confrontation, responsibility for the safety of others, or supervisor responsibilities. (Tr. 62-64). Certainly, the ALJ contemplated Plaintiff's mental limitations, particularly relating to depression and anxiety, in her questioning of the VE.

Last, Plaintiff claims the ALJ improperly omitted Plaintiff's limitations in concentration from the RFC. (Doc. 13, at 6-7). Plaintiff alleges the RFC determination contradicts the ALJ's step three finding that Plaintiff had moderate difficulties with regard to concentration, persistence, or pace. *Id*. However, as in the hypothetical, the ALJ restricted Plaintiff to work that was limited to simple routine tasks, involved few changes, and did not require a rapid pace in the RFC. (Tr. 16). Additionally, the ALJ found Plaintiff could perform only low-stress work, meaning no arbitration, negotiation, confrontation, responsibility for the safety of others, and no supervisory responsibility. (Tr. 16). Plaintiff has failed to explain how these fairly extensive mental limitations did not adequately account for Plaintiff's limitations in concentration.

Moreover, it is well established that the paragraph B criteria used at steps 2 and 3 of the sequential analysis is "not an RFC assessment." SSR 96–8p 1996 WL 374184, at * 4. "The

mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorder listings in 12.00 or the Listings of Impairments." *Id*. The ALJ did not err by finding moderate limitations in concentration, persistence, and pace at step three, then going on to formulate an RFC based on Plaintiff's functional abilities as set forth by the record.

It is worth highlighting that the crux of each of Plaintiff's arguments is not that the ALJ misconstrued the record or violated an applicable rule or regulation, but that there is evidence in the record to support an alternative finding. This type of argument is simply not cognizable in this Court, where even if there was evidence to support a conclusion different from that reached by the ALJ, which, at any rate, Plaintiff has failed to show, the Court must nevertheless affirm so long as the ALJ's conclusion is also supported by substantial evidence. *Jones*, 336 F.3d at 477. The Commissioner's brief fully outlines the substantial evidence supporting the ALJ's decision. (Doc. 15, at 11-16). Such information is incorporated herein but will not be repeated because Plaintiff's arguments are not well-taken for the reasons explained above. In sum, the Court finds the ALJ's RFC determination, and corresponding hypothetical, are supported by substantial evidence.

### CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the Court finds the Commissioner's decision denying DIB and SSI benefits applied the correct legal standards and is supported by substantial evidence. The undersigned therefore recommends the Commissioner's decision be affirmed.

s/James R. Knepp, II  
United States Magistrate Judge

12

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).